**UNITED STATES, Appellee,**

v.

**Frank JAPA, Defendant, Appellant.**

**No. 91–2118.**

United States Court of Appeals,
First Circuit.

Heard April 5, 1993.

Decided May 24, 1993.

Rehearing and Suggestion for
Rehearing En Banc Denied
Aug. 19, 1993.

Gordon R. Blakeney, Jr., Concord, NH, for appellant.

William F. Sinnott, Asst. U.S. Atty., with whom A. John Pappalardo, U.S. Atty., Boston, MA, was on brief, for appellee.

Before BREYER, Chief Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOWNES, Senior Circuit Judge.

In this appeal, defendant-appellant, Frank Japa, seeks to vacate his plea of guilty because of alleged errors made by the district court during the change of plea hearing. Japa also claims that the district court erred during the sentencing hearing.

After an undercover operation, Japa and one José Puello were arrested for drug trafficking. A two-count indictment was returned against them. Count One charged both with conspiring to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count Two charged them with possessing 500 grams or more of cocaine with intent to distribute within 1,000 feet of a public or private school in violation of 21 U.S.C. §§ 841(a)(1) and 845a (now § 860) and 18 U.S.C. § 2. Puello is not involved in this appeal.

After initially pleading not guilty, defendant changed his plea to guilty. There was no plea bargain. Because defendant was Spanish-speaking, an interpreter was used

during both the change of plea and sentencing hearings. Defendant was sentenced to seventy months' incarceration to be followed by a supervised release term of ninety-six months. Because defendant was impecunious, no fine was imposed; he was ordered to pay a special assessment of $100.

### The Change of Plea Proceedings

Defendant attacks the plea proceedings on three grounds: (1) he was not adequately informed of the maximum possible sentence; (2) his plea was not voluntary because he did not understand the charges against him; and (3) there was not an adequate record of a factual basis for accepting his plea. We discuss these claims seriatim.

### Informing Defendant of Maximum Possible Sentence

■ Although there may have been some confusion at the outset of the maximum-penalty discussion, the transcript of the change of plea hearing shows that defendant was adequately informed of and understood the maximum penalty he faced. A resumé of the plea hearing follows.

Defendant was asked by the court what the maximum sentence on Count One was. He replied, "I think it is five years." The court said, "I thought it was 15." The Assistant United States Attorney then stated:

MR. O'CONNOR: Your Honor, it's 20 years. But I would also note that it's going to be a sentencing issue, but the quantity of cocaine that is relevant with respect to both Counts 1 and 2 is at least 500 grams, so at a minimum he will be in a range under the minimum mandatory provision of five to 40 years. This is statutory, two million-dollar fine, $50 on each count, and a four-year term of supervised release, at least, on each count.

Defendant was then asked by the court, "Do you understand that?" He replied, "Yes, sir." He was then asked if he understood that "all of that can be added up, the two counts added together." He replied, "Yes." It was then explained to defendant that the five-year statutory minimum was the "floor." The Assistant United States Attorney then described the guideline range:

The guideline range is 63 to 78. However, I would note that in Count 2 the Court will notice he is charged with distribution within a thousand feet of a school yard, which allows the Court to punish up to two times. The guidelines say it would be a two level adjustment upwards if the government proves at sentencing that it was within a thousand feet of a school yard, which would put him within a range of 78 to 97 but then he may get acceptance of responsibility which would put him back to 63 to 78. So really what we're talking about is somewhere in the neighborhood of five to six years, five to six and a half years.

After the explanation of the guideline range was completed, the court asked defendant if he understood what the United States Attorney had been talking about. Defendant replied, "Yes, sir." The following colloquy then took place:

THE COURT: Do you understand that I'm obliged to sentence within the guidelines unless there is some special circumstance? And if there are special circumstances, I can go above the guidelines or below, I can depart from the guidelines, up to the maximum, which I think is 40 years on each count for a possible 80 years. In general, the sentence will be within the guidelines as more or less described by the U.S. Attorney.

THE DEFENDANT: Yes.

Following this, the court asked defendant if anyone had told him "what sentence the Court would, in fact, impose in the event of a plea of guilty?" The defendant replied that his attorney had told him he would serve "about one year and a half or something like that." The court pointed out that it had just been explained to defendant that the minimum sentence was five years. The court then asked defendant's attorney if he had an explanation for what defendant had stated. Defendant's attorney stated: "I don't have an explanation because it didn't occur." The attorney said he discussed the guidelines with defendant without the benefit of an interpreter. The attorney then suggested that the court ask defendant "if he under-

stands ... that the guidelines go anywhere from four to six years generally." The court then stated to defendant:

> Mr. Japa, there is no way that anybody could have told you what I am going to do because I don't know what I'm going to do, and I will come up with a sentence somewhere within the ranges, in all likelihood, that we have been talking about, that is five to six and possibly seven years. Do you understand that?

> THE DEFENDANT: Yes, sir.

Defendant was then asked if he wanted to change his plea. After a discussion with his attorney, with an interpreter present, defendant stated that he wished to go forward with a plea of guilty. In answer to the court's question, "Is your plea of guilty entirely free and voluntary?", the defendant answered, "Yes."

Based on the record of the change of plea hearing, we find that defendant was properly informed of the maximum penalty provided by law and that he understood the consequences of pleading guilty.

Defendant also alleges that he was inadequately informed of the term of supervised release he could be required to serve. Defendant was, in fact, sentenced to the precise term of supervised release of which he had been informed at the hearing.

### *Voluntariness of Plea*

█ The standard for setting aside a plea that has been entered and sentence imposed is narrow. Defendant must show a fundamental defect or a miscarriage of justice. Fed.R.Crim.P. § 32(d) provides:

> **(d) Plea Withdrawal.** If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. *At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.* (Emphasis added.)

It is the last sentence that is implicated here. The Note of the Advisory Committee on the Federal Rules of Criminal Procedure discussing the 1983 amendment to Rule 32(d) states in pertinent part:

> Under the amendment, a defendant who proceeds too late to come under the more generous "fair and just reason" standard must seek relief under § 2255, meaning the applicable standard is that stated in *Hill v. United States,* 368 U.S. 424 [82 S.Ct. 468, 7 L.Ed.2d 417] (1962): "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure."

Moreover, Rule 11, which governs plea procedures, expressly provides in part (h): "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

With this standard of review in place, we consider defendant's arguments. Defendant contends that his guilty plea was not voluntary because the record of the plea colloquy does not show that he understood the charges against him. Specifically, defendant asserts that the record does not establish that he understood the quantity of drugs he was charged with possessing, the charge of conspiracy, and the element of intent.

We start our analysis with the transcript of the change of plea proceedings:

> THE COURT: This indictment suggests that you—it doesn't suggest, it charges you with combining, conspiring, confederating and agreeing with Jose Puello and with other persons to knowingly and intentionally possess a mixture containing cocaine with an intent to distribute it on or about August 29th, 1990. Now, did you agree to possess a mixture containing cocaine on that day?

> THE DEFENDANT: Yes, sir.

> THE COURT: With Mr. Puello and others?

> THE DEFENDANT: Yes, sir.

> THE COURT: All right. And did you intend to distribute the cocaine?

> THE DEFENDANT: Yes, sir.

> THE COURT: And on September 3rd, 1990, did you and Mr. Puello, possess 500 grams or more of a mixture containing

cocaine within a thousand feet of a public school in the City of Lynn?

THE DEFENDANT: Yes, sir.

After the prosecutor had summarized the government's evidence the following colloquy took place:

THE COURT: Is that summary essentially true, Mr. Japa?

THE DEFENDANT: Basically.

THE COURT: In what respect is it not?

THE DEFENDANT: About the whole amount of the cocaine.

THE COURT: What does he say?

THE DEFENDANT: I was saying it was a kilo and I sold more, that sort of thing. I didn't say any of that.

THE COURT: You did try to sell them a pound or a half kilo?

THE DEFENDANT: That was the truth, but no more than that.

THE COURT: All right. Do you know of any reason why the Court should not accept your plea of guilty?

THE DEFENDANT: No.

During the prosecutor's summary of the evidence it was made clear that, although originally defendant had agreed to provide one kilo of cocaine to the government informant, the amount provided was one-half of a kilo. A gram is one thousandth of a kilogram; 500 grams, which was the amount defendant was charged with possessing, is one-half of a kilogram, or slightly more than one pound. We hold that the record establishes that defendant understood the amount of drugs he was charged with possessing.

■ We also find, based on the record, that defendant understood he was charged with conspiring with others to possess and distribute 500 grams of cocaine. The district court told defendant he was charged in the indictment "with combining, conspiring, confederating, and agreeing with Jose Puello and with other persons," etc. Defendant gave affirmative answers ("Yes, Sir") to two questions by the court asking whether he agreed with Puello and others to possess cocaine on August 29th. Defendant did not

advise the court either himself or through counsel that he did not understand the conspiracy charge. We do not think that, where a defendant is represented by counsel,[1] and no specific claim is made that the defendant does not understand a question or explanation by the court as to what is charged in an indictment, the court is required to do more than explain the charges in plain understandable language. The conspiracy charge met this test. We add that a detailed explanation of "conspiracy" with its many nuances would probably result in confusion and bewilderment of a defendant.

### Understanding of Intent—Factual Basis for Plea

■ Defendant's claim that the record is inadequate to establish that he understood the intent element of the crimes charged necessarily includes his contention that there was an inadequate factual basis for accepting a plea of guilty, as we explain below.

We start our analysis with the indictment. Count One charges as follows. "From on or about August 29, 1990 and continuing to on or about September 3, 1990" in Lynn, Massachusetts, the defendants Frank Japa and José Puello did conspire "knowingly and intentionally to possess with *intent to distribute*" 500 grams of cocaine. The court asked defendant two separate questions: did he possess the cocaine and did he intend to distribute it. Defendant answered "yes" to both questions. This was sufficient to establish that defendant understood the element of intent as to Count One.

A problem arises, however, as to the adequacy of the court's question covering Count Two. Count Two charges that "On or about September 3, 1990" the defendants, Japa and Puello, "did knowingly and intentionally possess with intent to distribute 500 grams" [a mixture containing cocaine] ... "and did so within 1000 feet" [of a public or private school]. The court's question of defendant on this count, however, omitted any inquiry as to intent. Defendant was not asked whether he intended to possess *and distrib-*

---

**1.** Defendant has indicated that there may be a claim of incompetency of counsel waiting in the wings. Such a claim is not an issue in this case and except for noting it, we make no comment.

*ute* the cocaine within 1,000 feet of a school. The court asked only whether defendant and Puello "did possess 500 grams" of a mixture containing cocaine within 1,000 feet of a public school. This omission was compounded by the failure of the government to say anything about a school at all in its statement of proof.

At the outset of our discussion we frame the issue before us: Was the omission of an intent inquiry by the district court, combined with the failure of the prosecutor to include in his proof statement any reference to a school, "a fundamental defect [in the plea proceeding] which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure?" *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962). Or to put a different cast on it, did the two omissions affect substantial rights of defendant? Fed.R.Crim.P. 11(h). We think not, for the reasons that follow.

The presentence report, in the section on offense conduct, contains this statement: "Japa's apartment was within 1000 feet of a schoolyard in Lynn."[2] There was no objection to this or any other statement in the PSI.[3] We held in *United States v. Zorrilla,* 982 F.2d 28, 30–31 (1st Cir.1992), that information in the presentence report and/or adduced at the probable cause hearing was sufficient to satisfy the elements of the crime charged even though the district court judge failed to establish a factual basis for the plea at the hearing. The defendant here admitted to possessing cocaine within 1,000 feet of

a public school. He also admitted in answer to questions by the court covering Count One that he and Puello possessed and intended to distribute 500 grams of cocaine. It is obvious that Counts One and Two referred to the same cocaine—a one-half kilo block. Our focus is on whether defendant's plea was voluntary, not whether the government proved him guilty beyond a reasonable doubt. We said in *United States v. Allard,* 926 F.2d 1237, 1244 (1st Cir.1991):

> The effect of a failure to comply with the requirements of Rule 11 depends upon the nature of the failure. Mere technical violations of its procedural requirements do not warrant setting aside a plea. That is especially true if the defendant was not misled or the omission did not affect his decision.

We have read the transcript of the change of plea hearing carefully, bearing in mind that defendant needed an interpreter to translate from English to Spanish and vice versa. Defendant never suggested that he did not understand any part of what was being said to him or about him. There was no complaint about the competency of the interpreter. We conclude that defendant's plea was knowing and voluntary.[4]

### Sentencing

■ Defendant claims that the district court erred by failing either to inquire directly of defendant whether he had an opportunity to review and discuss the presentence report, or to have the record reflect that defendant and counsel had an adequate opportunity for such review. Neither claim is supported by the record.

---

**2.** The cocaine had been taken from defendant's apartment and placed in a car where it was seized.

**3.** We discuss defendant's contentions relative to the PSI *infra.*

**4.** Because of the context of this case, we see no need to decide whether the schoolyard statute, 21 U.S.C. § 860, is ambiguous and whether intent to distribute within the schoolyard zone has to be proven by the government, or whether it is irrelevant or can be imputed to the defendant so long as he possesses an amount of illegal substances from which intent to distribute may reasonably be inferred. To date, Courts of Appeal in the District of Columbia, Third and Fifth Circuits

have held that the government is not required to prove intent to distribute within the protected zone. *See United States v. McDonald,* 991 F.2d 866, 869 (D.C.Cir.1993); *United States v. Rodriguez,* 961 F.2d 1089, 1092 (3rd Cir.1992); *United States v. Wake,* 948 F.2d 1422, 1430 (5th Cir. 1991). District courts in the Northern District of Illinois and the Southern District of New York have required the government to prove intent to distribute within the protected zone. *See United States v. Testa,* 768 F.Supp. 221, 223 (N.D.Ill. 1991); *United States v. Coates,* 739 F.Supp. 146, 153 (S.D.N.Y.1990); *United States v. Roberts,* 735 F.Supp. 537, 543 (S.D.N.Y.1990); *United States v. Liranzo,* 729 F.Supp. 1012, 1014 (S.D.N.Y. 1990).

At the outset of the disposition hearing, defendant's attorney was asked, "was the pre-sentence investigation report reviewed by you and your client?" The answer was "Yes." The attorney stated, in answer to questions by the district court, that he had no objections to any of the factual statements in the report and that there were no legal issues in dispute. Then followed a rather lengthy argument by defendant's attorney that defendant was entitled to a minor-role point deduction. The Assistant United States Attorney pointed out that the issue was moot because under the statute the minimum sentence was five years. The court correctly held that "the minimum mandatory trumps the guidelines." After further discussion by the Assistant United States Attorney and defense counsel as to defendant's role in the offense, the court sentenced defendant to imprisonment "for 70 months, 96 months supervised release, no fine, no restitution, and a hundred dollars special assessment." The sentence was within the guideline range of 63 to 78.

■ The statements of defense counsel show that the district court did inquire as to whether defendant and his counsel had an adequate opportunity to review the presentence report. Defense counsel's answer to the court's question on this score and his argument on his client's role in the offense showed that defendant's attorney was familiar with the presentence report and the factual and legal conclusions contained therein. Moreover, defendant has not pointed out to us any inaccuracies in the presentence report. This means that even if there were an error in the manner the court conducted the disposition hearing, and we have found none, it would be harmless.   .

*Affirmed.*