USCA1 Opinion

 

 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-2285 UNITED STATES, Appellee, v. JOHN PATTI, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Cyr, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ John Patti on brief pro se. __________ Paul M. Gagnon, United States Attorney, and Jean B. Weld, ______________ ____________ Assistant United States Attorney, on Motion for Summary Disposition for appellee. ____________________ May 2, 1997 ____________________ Per Curiam. Pursuant to a written plea agreement, __________ defendant John J. Patti pled guilty to a one count indictment charging him with conspiracy to commit access device (credit card) fraud by knowingly and intentionally using a counterfeit credit card, in violation of 18 U.S.C. 371, and 1029(a)(1). He was sentenced to 18 months' imprisonment. On appeal he seeks for the first time to withdraw his guilty plea. To prevail on this "afterthought ground" a defendant must show a "substantial defect" in the record of the Rule 11 proceeding itself. United States v. Piper, 35 _____________ _____ F.3d 611 (1st Cir. 1994), cert. denied, 115 S. Ct. 1118 _____________ (1995); see also United States v. Noriega-Millan, -- F.3d --- ________ _____________ ______________ , 1997 WL 151202 *4 & n.4 (1st Cir. Apr. 7, 1997).1 This he 1 has not done. Patti claims that his plea was involuntary because he did not understand the "true nature of the elements of the crime charged in the indictment." He alleges that there was an insufficient factual basis for his plea, that his attorney failed to explain the charge to him, and the court mischaracterized the charged crime.  The record contradicts these assertions. Patti was advised by the Court, in plain and understandable terms, of  ____________________ 1An appellant faces a "high hurdle" when he seeks to set 1 aside a guilty plea for the first time on appeal, although the contours of the burden are "somewhat cloudy." Noriega- ________ Millan, -- F.3d ---, 1997 WL 151202 *6 n.4 (citations ______ omitted). We need not reach that issue here.  -2- the elements of the offense. True, in addition to telling Patti  that he was charged with conspiring to use a particular "counterfeit" card, the court also defined the term "unauthorized" card. "Unauthorized" has a different statutory meaning from "counterfeit," see 18 U.S.C.  ___ 1029(e)(2)(3), and use of an "unauthorized" card is criminalized in a separate subsection of the law. See 18 ___ U.S.C. 1029(a)(2). The two subsections carry different maximum penalties, but the crime to which Patti actually pled guilty -- conspiracy to commit another offense, see 18 U.S.C. ___ 371 -- carries a maximum five-year penalty regardless of whether the object offense is defined in subsection (a)(1) or in subsection (a)(2) of 18 U.S.C. 1029.  The "totality" of the hearing record, however, reveals no misunderstanding as to the charge. United States _____________ v. Martinez-Martinez, 69 F.3d 1215, 1222 (1st Cir.), cert. _________________ _____ denied, 116 S. Ct. 1343 (1995). The elements of the crime ______ were reiterated at the hearing by the government prosecutor, whose offer of proof emphasized that the card fit the definition of "counterfeit" because it had been altered.2 2 The definition of a "counterfeit access device," expressly  ____________________ 2The name, account number and bank imprinted on the face 2 of the card did not match the information encoded on the card's magnetic stripe.  -3- including any component that is "counterfeit, fictitious, altered, or forged," was fully set forth in the written plea agreement. Patti signed the agreement, and certified his understanding of its terms.  Under oath at the plea hearing, Patti said that he understood the charge, his attorney said that he had reviewed each paragraph of the indictment and the plea agreement with Patti, and Patti swore that he was fully satisfied with his attorney's representation and advice. Any error in the district court's explanation thus was harmless. United ______ States v. Buckley, 847 F.2d 991, 1000 n.11 (1st Cir. 1988), ______ _______ cert. denied, 488 U.S. 1015 (1989); see also United States v. ____________ ________ _____________ Japa, 994 F.2d 899, 902 (1st Cir. 1993). Even if, as Patti ____ now belatedly claims, he personally did not understand a legal nuance, an informed plea based on competent counsel's advice3 is acceptable in the circumstances of this case. 3 Allard v. Helgemoe, 572 F.2d 1, 6 (1st Cir.), cert. denied, ______ ________ ____________ 439 U.S. 858 (1978); see also Nelson v. Callahan, 721 F.2d _________ ______ ________ 397, 401 (1st Cir. 1983).  Patti also now claims that there was an insufficient factual basis for his plea because he did not  ____________________ 3If Patti now wishes to offer extra-record facts to prove 3 otherwise, he must initiate a collateral proceeding under 28 U.S.C. 2255. Noriega-Millan, -- F.3d --, 1997 WL 151202 *6 ______________ n.3. We caution, however, that ordinarily a defendant will not be heard, even in a collateral proceeding, to controvert his own sworn Rule 11 statements. See United States v. Butt, ___ _____________ ____ 731 F.2d 75, 80 (1st Cir. 1984). -4- know that the card specified in the indictment was counterfeit. The record reflects, however, that Patti admitted to the probation officer that when he joined the conspiracy he knew its breadth. He knew it was a "complete," on-going, "stolen credit card scam," replete with a designated "fence." Indeed, six credit cards, all of which were once valid, but subsequently traded, sold, or stolen and reprogrammed, were found in Patti's rented automobile. He admitted knowing that he had no right to use the card specified in the indictment, and assumed it was "stolen." The only ignorance he claimed was of the fact that the card was "all rigmaroled like . . . they say."  True, a "conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself." Ingram v. United States, 360 U.S. 672 (1959); see ______ _____________ ___ also Piper, 35 F.3d at 614 (explaining that a conspirator ____ _____ must have intended both to agree and to effectuate the commission of the substantive offense). We need not decide here, however, how much technological knowledge may be imputed to a conspirator who has admittedly conspired to use an illicit access device.  The hearing record reflects a factual basis for doubting the reliability of Patti's self-professed ignorance that the card was altered, and a rational reason for -5- calculating that his own interests would be best served by a guilty plea. See North Carolina v. Alford, 400 U.S. 25 ___ ______________ ______ (1970). An informed and calculated plea based on competent counsel's advice about the wisdom of pleading guilty or going to trial is all that is required. Allard, 572 F.2d at 6.  ______ As to Patti's remaining challenges to the sentence: (1) We see no "clear error" in the district court's decision to increase Patti's guideline sentencing range by two levels for "more than minimal planning," under USSG 2F1.1(b)(2). Ample record evidence supports the court's finding that Patti's participation in the conspiracy was not a "spur of the moment" crime, but the product of more than minimal planning. United States v. Gregorio, 956 F.2d _____________ ________ 341, 343 (1st Cir. 1992). In addition to Patti's two known uses of the counterfeit card on the day he was arrested, the other five illicit cards were found concealed in the panels of an automobile which he had rented two weeks earlier. See ___ USSG 1B1.1 comment (n.1(f)). (2) There is also no support for Patti's argument, raised for the first time on appeal, that the enhancement for "more than minimal planning" somehow violated the plea agreement or Patti's understanding of the plea agreement, and required the court to sua sponte offer Patti an opportunity ___ ______ to withdraw his guilty plea.  -6- The plea agreement expressly was made subject to Fed. R. Crim. P. 11(e)(1)(B), and the Sentencing Guidelines. Before entering his guilty plea, Patti was unequivocally informed by the court that he would not be permitted to withdraw the plea except in one circumstance. "If I do not accept the [$2,000 fraud loss] stipulation, Mr. Patti, I will allow you to withdraw your plea of guilty if you choose to do so, however, you will not be allowed to withdraw your plea for any other reason; do you understand?" Patti said that he understood. Accordingly, the judgment of the district court is affirmed. ________ -7-